IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMARA D. DEHZARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-07-677-F |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for supplemental security income ("SSI")

benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382.  Defendant

has answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues.   The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following

reasons, it is recommended that the Commissioner's decision be reversed and remanded for

further administrative proceedings.

I. Procedural History

Plaintiff filed an application for SSI benefits on October 11, 2002, in which she

alleged that she became disabled on December 15, 1995. (TR 67-68).  Plaintiff filed another

application for SSI benefits on November 12, 2002, in which she alleged that she became disabled on February 5, 1998. (TR 69-70).  In her applications, Plaintiff alleged she was disabled due to a seizure disorder, back injury, severe post-traumatic stress disorder, and depression. (TR 81).  Plaintiff alleged that she stopped working on March 15, 2001, when she was "terminated because of seizures." (TR 81).  Plaintiff described previous jobs as a receptionist/secretary, home health aide, and cashier/sales clerk. (TR 82, 93-98).  Plaintiff's applications were combined for administrative proceedings, and the agency determined the application was protectively filed on September 5, 2002. (TR 90).  Plaintiff's application was administratively denied. (TR 11). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ Parrish") on February 15, 2005. (TR 653-688).  ALJ Parrish issued an unfavorable decision on September 22, 2005. (TR 466-473).  The Appeals Council reversed this decision and remanded the proceeding to an administrative law judge for another administrative hearing.  (TR 474-478).  In the Appeals Council's decision, the Appeals Council provided specific instructions concerning the consideration of the evidence with respect to Plaintiff's mental and physical impairments. (TR 476-478).

Subsequently, a second administrative hearing was conducted before Administrative Law Judge Moser ("ALJ") on August 15, 2006. (TR 610-652).  At this hearing, Plaintiff, a medical advisor, Dr. Burnard Pearce, and a vocational expert ("VE") testified.  Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 11-22).  The Appeals Council denied

Plaintiff's request for review of the administrative decision. (TR 3-5). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. <u>Standard of Review</u>

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. <u>Emory v. Sullivan</u>, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hamilton v. Secretary of Health & Human Servs.</u>, 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A).   The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920(b)-(f) (2007); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Plaintiff's Contentions and Defendant's Response

Plaintiff contends that the ALJ erred by failing to follow Social Security Ruling 96-6p and 20 C.F.R. § 416.927(f).  Specifically, Plaintiff contends that the ALJ did not explain why she ignored the opinions of Dr. McClendon, Dr. Green, and Plaintiff's "treating doctors." Plaintiff's Brief, at 7.   Plaintiff further alleges that the ALJ failed to express any consideration of (1) Plaintiff's treatment with psychotropic drugs and (2) Global Assessment of Functioning ("GAF") scores included in the record.  Also, Plaintiff's alleges that the ALJ failed to discuss and explain the weight given to the Plaintiff's "psychiatric records" at five facilities. Plaintiff's Brief, at 9.  Plaintiff contends that the ALJ's residual functional capacity ("RFC")  assessment for Plaintiff is not supported by substantial evidence in the record and

that the ALJ erred by failing to assess Plaintiff's RFC "on a function by function basis" and by failing to adequately discuss Plaintiff's testimony. Plaintiff's Brief, at 9-10. Finally, Plaintiff contends that the ALJ erred in her evaluation of Plaintiff's credibility. Defendant Commissioner responds that no error occurred with respect to the ALJ's evaluation of the evidence and that the Defendant's decision should be affirmed.

IV. <u>Evaluation of Medical Opinions</u>

Plaintiff relies on SSR 96-6p and 20 C.F.R. § 416.927(f) in arguing that the ALJ failed to explain the weight given to and the reasons she ignored the opinions of two consultative psychological examiners, Dr. McClendon and Dr. Green. Although Plaintiff also asserts that the ALJ erred by failing to explain the weight given to the opinions of Plaintiff's "treating doctors" or reasons for ignoring her treating doctors' opinions, Plaintiff does not indicate what treating doctors' opinions she believes were ignored or improperly weighed. Plaintiff's argument is unavailing

SSR 96-6p sets forth the agency's policy interpretation ruling concerning the consideration of administrative factual findings by state agency medical and psychological consultants. SSR 96-6p, "Titles II and XVI: consideration of administrative findings of fact by state agency medical and psychological consultants and other program physicians and psychologists at the administrative law judge and appeals council levels of administrative review; medical equivalence," 1996 WL 374180 (July 2, 1996). This ruling has no relevance to the opinions of the consultative examiners, Dr. McClendon and Dr. Green, who are private physicians and are not employed by the agency, or to any opinions by Plaintiff's treating

medical providers.    Plaintiff also refers to 20 C.F.R. § 416.927(f).  This regulation provides that the agency will consider all evidence from nonexamining sources as "opinion evidence" that is evaluated under 20 C.F.R. § 416.927(a) through (e).  Plaintiff has not asserted that the ALJ failed to properly consider evidence from nonexamining medical professionals.

Dr. McClendon provided a consultative evaluation of Plaintiff for the Texas Rehabilitation Commission on August 2, 2001. (TR 133-138).  Dr. McClendon administered several tests to Plaintiff and summarized his findings in a report.  Dr. McClendon notes in the report that testing showed Plaintiff to have average intellectual capacity and cognitive ability, no impairment in short term memory, attention, or concentration, no impairment in her ability to act in social conformity or exercise good reasoning ability, good mental organization and motor coordination, good visual motor dexterity, and normal level of persistence and performance speed. (TR 134-135).  Dr. McClendon noted that Plaintiff had experienced psychological problems stemming from early sexual abuse which interfered with and undermined her ability to function and she had also "tended to turn increasingly to drugs and alcohol which further undermined her ability to work and maintain personal stability." (TR 135-136).  However, Dr. McClendon concluded that Plaintiff was "well motivated," exhibited "good intellectual and academic skills," and that she "should be able to develop job skills and should be able to work and support herself in the future." (TR 135-137).  The psychologist estimated that there was "good" prognosis for Plaintiff's successful rehabilitation and future employment, so long as Plaintiff maintained sobriety and resolved her "dental problems." (TR 137-138).  Dr. McClendon's diagnostic impression was major

depression, recurrent, moderate, polysubstance dependence, in early partial remission, and alcohol dependence, in early partial remission. (TR 137).

Dr. Green provided a consultative psychological evaluation of Plaintiff for the agency on May 10, 2005. (TR 457-462). Dr. Green administered several tests and submitted a report of his findings. In his report, Dr. Green noted that Plaintiff described an inability to work due to a seizure disorder and inability to sit or stand for long periods of time due to back problems. (TR 458). Plaintiff stated that she began having seizures at age 10, that she loses consciousness for about 30 minutes with a seizure, that her last seizure was the previous day, and that she has "several [seizures] a week." (TR 458). Plaintiff described outpatient mental health treatment beginning in 2001 with medications. (TR 458). Plaintiff stated she had dropped out of high school and married at age 16, obtained a GED at age 22, and had remained married for 16 years when she then left her husband and her two children. (TR 459). Plaintiff stated that a second marriage ended in divorce after two years. (TR 459). Plaintiff had been single for two years and was receiving public assistance in the form of housing and food stamps at the time of the evaluation. (TR 459). Plaintiff described "occasional" illegal drug use, a "problem" with alcohol abuse for six years, with alcohol use ending the previous year, and three arrests, the last one "years ago," for public intoxication. (TR 459). Plaintiff stated that her symptoms included depression, mood swings, occasional auditory hallucinations, lack of appetite, and lack of motivation to "do anything." (TR 457). In a typical day, Plaintiff stated that she got up, made coffee, took her medications, watched television, visited with her neighbors, and performed all of her own household chores,

including cooking, cleaning, laundry, and shopping, independently. (TR 459).

Dr. Green indicated that he had reviewed Dr. McClendon's report as well as Plaintiff's treatment records from Dr. Joseph and Dr. Ghaznavi. (TR 458). With regard to Plaintiff's test results, Dr. Green stated that Plaintiff's testing showed her to have average intellectual ability, with significantly lower performance scores, adequate attention and concentration, good persistence, ability to work at an adequate pace, good frustration tolerance, the ability to retain and carry out instructions, the ability to relate appropriately to others, and indications on a personality test that Plaintiff "tends to exaggerate or amplify psychological symptoms, perhaps in a desperate plea for help." (TR 459-461). Dr. Green's diagnostic impression was major depressive disorder, recurrent, with psychotic features, cognitive disorder, and alcohol abuse, in sustained full remission by Plaintiff's report. (TR 462). Dr. Green completed a mental RFC assessment in which the psychologist indicated that Plaintiff's ability to understand, remember, and carry out instructions and that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting were not affected by a mental impairment. (TR 463-465).

The ALJ's decision reflects express consideration of these consultative examiners' reports. (TR 14-15). As these consultative examiners were not treating doctors, the ALJ was not required to evaluate their medical assessments under the standard developed for the evaluation of the opinions of treating doctors. See, e.g., Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996)("Generally, the ALJ must give controlling weight to a treating physician's well-supported opinion about the nature and severity of a claimant's impairments."). Under

8

this standard, "[t]he treating physician's opinion is given particular weight because of [the physician's] 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003)(quoting 20 C.F.R. § 416.927(d)(2)).   In evaluating other medical opinions in the record, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)(citing, e.g., 20 C.F.R. § 416.927(1) and (2) and SSR 96-6p, 1996 WL 374180, at *2).

Because the ALJ's decision reflects the ALJ's consideration of the reports of the consultative psychological examiners, and because the reports of Dr. McClendon and Dr. Green do not provide probative evidence that was ignored or improperly discounted by the ALJ, no error occurred with respect to the ALJ's consideration of this evidence.

Plaintiff also contends that the ALJ erred by failing to discuss the Axis V diagnostic impressions in the record by her treating mental health professionals.   Where there is evidence of a mental impairment in a disability claimant's record, the ALJ must determine the severity of the claimant's mental impairment(s) using the procedure set forth in 20 C.F.R. § 416.920a (for SSI claims).   This procedure requires the ALJ to determine the degree of functional limitation in four general areas that are related to the alleged mental impairment(s).

9

The record contains numerous diagnoses of Plaintiff's mental impairments and reflects Plaintiff's ongoing treatment for mental impairments with medications and counseling at several mental health facilities in Texas beginning in July 2001 and then in Oklahoma after she moved to Oklahoma in February 2004.  Many of these diagnoses by Plaintiff's treating mental health professionals are described in terms of Axis I, Axis II, Axis III, Axis IV, and Axis V diagnoses.  The diagnosis of mental impairments as established by the American Psychiatric Association ("APA") "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32).

In Plaintiff's case, the ALJ found that Plaintiff had a severe combination of mental impairments which included "substance induced mood disorder, alcohol abuse, poly substance dependence, major depression, post-traumatic stress disorder, cognitive disorder not otherwise specified, and pseudo seizure disorder." (TR 14).  The ALJ elicited testimony from a medical advisor, Dr. Pearce, at the second administrative hearing with respect to the third step issue of whether Plaintiff's severe mental impairments satisfied the requirements

of one or more impairments set forth in the agency's Listing of Impairments.  Dr. Pearce testified that he had reviewed Plaintiff's medical records and that Plaintiff's mental impairments had resulted in mild limitations in her activities of daily living, moderate limitations in social functioning, mild limitations in concentration, persistence, or pace, and one or two decompensations in work or work-like settings. (TR 635-636, 638-639).  On cross-examination by Plaintiff's attorney, Dr. Pearce agreed that Plaintiff's treating psychiatrist had diagnosed polysubstance dependence in full remission in May 2006 and that Plaintiff's psychiatrist had diagnosed major depressive disorder, recurrent, moderate and post-traumatic stress disorder in March 2006. (TR 641-642).   Dr. Pearce also agreed that Plaintiff's treating psychiatrist opined that Plaintiff's GAF at that time was 47. (TR 642). Dr. Pearce further testified that Plaintiff's treating psychiatrist opined that her GAF scores were consistently low in June 2004. (TR 642).  Dr. Pearce agreed that several of Plaintiff's treating and examining psychiatrists had placed her GAF between a range of 35 to 51 from 2001 through 2006. (TR 643).  Dr. Pearce further agreed that under the APA's diagnostic approach GAF scores between 41 to 50 would indicate serious symptoms or a serious impairments in social, occupational, or school functioning and that Plaintiff's GAF scores have been "pretty consistent" over the course of the previous six years. (TR 644-645).  With respect to the anti-psychotic medication prescribed for Plaintiff, Dr. Pearce admitted that this medication is used with individuals who have "some substantial difficulties...." (TR 645). In the first administrative hearing, the VE testified that GAF scores in the fifties indicate serious symptoms and an inability to keep jobs. (TR 686).  The VE also testified that a GAF

score in the range of 41 to 50 indicates serious symptoms and somebody with these routine GAF scores would typically "have problems accessing jobs and maintaining them." (TR 686).

Despite the record showing persistently low GAF scores in Plaintiff's treating doctors' opinions, the ALJ did not address in her decision the Axis V diagnoses of Plaintiff's treating and examining mental health professionals with regard to her functional ability. Nor did the ALJ analyze the GAF scores as the opinions of treating doctors as required by the regulations and precedent. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). Moreover, the ALJ failed to address the testimony of the medical advisor and the VE concerning the direct relationship between the Axis V diagnoses and an individual's ability to maintain a job. Indeed, the Appeals Council remanded Plaintiff's case for a second administrative hearing because the first ALJ had not considered the Plaintiff's GAF scores. The Appeals Council stated that "[w]hile there is no clear opinion of disability by the treating and examining sources, there are Global Assessment of Functioning codes of 35, 45, 50 and 51, which could indicate more functional limitations than what were included in the residual functional capacity [found by the first ALJ]." (TR 476).

The record contains diagnostic evaluations of Plaintiff at several mental health facilities. In 2001, she began treatment at the Gulf Coast Center where she was diagnosed in December 2001 with major depressive disorder, recurrent, moderate, and post-traumatic stress disorder. (TR 258). Her treating psychiatrist noted that Plaintiff had a "dysfunctional" home life, previous sexual abuse by her father, physical and emotional abuse in her previous

12

marriage, and current issues involving homelessness, unemployment, and recovering alcoholism. (TR 250-251). The psychiatrist noted an Axis V GAF score of 50. (TR 252). In August 2001, a consultative psychological examiner reported that Plaintiff's Axis V GAF score was 51 indicating her then-current level of functioning. (TR 137). In February 2003, the diagnosis was altered to major depressive disorder, recurrent, severe with psychotic features and post-traumatic stress disorder. (TR 206). Again, an Axis V GAF score of 50 was noted. (TR 206).

In a psychiatric consultative evaluation conducted in July 2003, the examining psychiatrist noted diagnostic impressions of major depression with psychotic features, alcohol dependence in remission, chronic post-traumatic stress disorder, and a personality disorder with borderline dependence and an Axis V GAF score of 35. (TR 267-270). In an initial psychiatric evaluation of Plaintiff conducted by Dr. Ghaznari in February 2004, Dr. Ghaznari noted a diagnosis of severe post-traumatic stress disorder, chronic alcohol dependence in early remission, rule out bipolar II disorder with psychotic features and borderline traits. (TR 338). Dr. Ghaznari prescribed several medications, including an anti-psychotic medication, and noted an Axis V GAF score of 45. (TR 338). In March 2004, Plaintiff was evaluated at another mental health facility where she stated she was living with her sponsor and had been sober since February 2004. Plaintiff reported she still had hallucinations that were decreased on a regimen of three doses per day of anti-psychotic medication. (TR 360). Plaintiff was diagnosed with post-traumatic stress disorder, delayed onset, polysubstance dependence, and rule out major depressive disorder. (TR 360). An Axis

13

V GAF score of 50 was noted. (TR 359).

In April 2004, a mental health counselor diagnosed Plaintiff with a substance induced mood disorder and polysubstance dependence. (TR 430). In June 2004, Plaintiff reported to her treating psychiatrist that she was feeling better, experiencing fewer visual hallucinations. (TR 421). In August 2004, her treating psychiatrist noted Plaintiff reported "significant improvement" in her symptoms, and objectively she was calm, cooperative, clear, goal directed, and exhibited good eye contact. (TR 417). Her medications, including a sleeping aid, anti-depressant, anti-psychotic, and anti-anxiety medication were continued, however. (TR 417). In October 2004, Plaintiff's treating psychiatrist noted a diagnosis of post-traumatic stress disorder and alcohol dependence. (TR 365). However, in November 2004, her treating psychiatrist noted a diagnosis of substance-induced mood disorder, polysubstance dependence, and an Axis V GAF score of 50. (TR 407).

The record shows Plaintiff continued seeking mental health treatment in 2005, 2006, and 2007. A treating psychiatrist noted a diagnosis of major depressive disorder, recurrent, moderate, and polysubstance dependence in partial remission in February 2006. (TR 533-534). In May 2006, the diagnosis was changed to polysubstance dependence in full remission. (TR 567). In April and May 2006, Plaintiff reported to her counselor that she was helping some neighbors in her apartment complex, cooking for them , working from home for her boyfriend, and helped a neighbor find housing in a senior citizens living center and also helped the neighbor move to the center. (TR 563-565). In September 2006, Plaintiff reported she had stopped taking the anti-psychotic medication because of side effects and she

14

denied experiencing hallucinations. (TR 603). In March 2007, her treating psychiatrist noted a diagnosis on Axis I of major depressive disorder, recurrent, moderate, polysubstance dependence in partial remission, posttraumatic stress disorder, and bipolar I disorder.  The psychiatrist noted an Axis V GAF score of 50. (TR 595).   In April 2007, her treating psychiatrist noted that Plaintiff was diagnosed with depression and was to continue her medications, which included two anti-depressant medications, anti-anxiety and sleeping aid medications, as well as a medication used to treat bipolar disorder. (TR 593).  The medical advisor testified that Plaintiff had been diagnosed with major depressive disorder by some treating mental health professionals and that her "current treating source calls it a substance induced mood disorder." (TR 638).

The ALJ's failure to discuss the consistently low GAF scores in the record in connection with the required analysis of Plaintiff's functional limitations is error.  See Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001)(ALJs "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative")(quotation omitted).  This error is compounded by the ALJ's attempt to trivialize the record of Plaintiff's severe depression, post-traumatic stress disorder, and psychotic symptoms.  Despite the extensive evidence of treatment of Plaintiff for depression and post-traumatic stress disorder over a lengthy period of time, including following the ALJ's decision, the ALJ stated that the "medical reports associated with such complaint [of depression] point to a substance abuse disorder and situational factors, including unemployment and domestic problems." (TR 17).   "[H]er depression has been largely

situational." (TR 18).  The ALJ also stated that "[a]lthough the claimant reported a history of abuse, the record contains little support for a finding of significant on-going symptoms of post-traumatic stress disorder." (TR 17).  These statements are not supported by the record and reflect an improper substitution of the ALJ's opinion for that of numerous treating and examining mental health professionals over a six year period.  See Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004)("An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.").

With respect to Plaintiff's long-term treatment for reported visual and auditory hallucinations, the ALJ stated that "[a]lthough the claimant has complained of hallucinations, it appears that such episodes are unlikely to occur, absent the abuse of alcohol or drugs." (TR 17).  No treating or examining mental health professional related Plaintiff's persistent reports of visual and auditory hallucinations to drug or alcohol abuse.  This statement is also an improper substitution of the ALJ's own subjective opinion for that of Plaintiff's treating mental health professionals.  Moreover, these statements simply ignore evidence in the record that conflicts with the statements, and this is error as well.

Because these errors affected the step four RFC assessment made by the ALJ, the Commissioner's decision should be reversed and remanded for further administrative proceedings to correct these errors.  In light of this recommendation, it is not necessary to discuss the Plaintiff's remaining assertion that the ALJ's step four RFC finding is not supported by substantial evidence in the record.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ____March 20th_____, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____29th_____ day of _____February_____, 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE